UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TEAM 125, INC., | Case No. 2:21-CV-00520-KJD-NJK |
| Plaintiff, | ORDER |
| v. | |
| EASTERN AIRLINES, LLC, a Nevada limited liability company, | |
| Defendant. | |

Presently before the Court is Defendant's Motion to Dimiss (#7). Plaintiff filed a response in opposition (#12) to which Defendant replied (#14).

I. Background

The following allegations of the complaint are taken as true when evaluating a motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff, Team 125, Inc., is an aircraft operator led by Lincoln Francis ("Lincoln"), who has thirty-five years of experience in the aviation industry. Complaint, ECF 1 ("Compl.") ¶ 1. Lincoln was introduced to Bob Kraft in early 2016, because the New England Patriots and Kraft were interested in securing premium, private transportation to/from away games during the football season and other incidental travel. Id. Moreover, Kraft grew interested in expanding his empire by creating a commercial aircraft carrier to provide travel services to professional sports teams during their season. Id. Shortly after this plan was created, certain Kraft Entities[1] and Team 125 entered several agreements to build out a fleet of aircraft to

---

[1] As used in the complaint, the "Kraft Entities" are defined as those certain entities that are owned and/or controlled by Robert Kraft ("Kraft") that are relevant to this dispute and consist of Kraft Group LLC ("Kraft Group"), Kraft Enterprises LLC ("Kraft Enterprises"), Kraft Family Inc. ("Kraft Family), New England Patriots LLC (the "Patriots"), and 2/25/94 LLC ("2/25").

1  accomplish this venture. Id. Team 125 built a fleet of planes from the ground up, and has
2  deployed its sophistication and knowledge of the airline industry and Federal Aviation
3  Administration ("FAA") rules and regulations to take active steps toward ultimately becoming
4  Team Airlines. Id.

5  Unbeknownst to Team 125, Kraft began to develop a relationship with Defendant Eastern
6  Airlines. This led to Kraft terminating its contracts with Plaintiff without notice or reason.
7  Eventually, Team 125 discovered that the reason was Kraft's desire to proceed with the same
8  plan with a new partner, Eastern Airlines. According to the allegations of the complaint, Eastern
9  is a fledgling commercial aircraft operation that knew of the contracts with Team 125 and
10 offered Kraft enterprises a deal so sweet they could not refuse betraying Team 125 and
11 abandoning Team Airlines during the eleventh hour, as FAA certification had been nearly
12 completed. Id., ¶ 2

13 Eastern entered into agreements with Kraft covering the very same services and
14 provisions Team 125 and Kraft contracted for prior to Kraft even sending a termination notice to
15 Team 125. Id. ¶ 3. Moreover, Eastern had knowledge of Team 125 and Kraft's relationship and
16 contracts providing for such services. Id. Eastern Airlines even attempted to steal—and in some
17 cases, did steal—employees of Team 125 who serviced the aircrafts pursuant to the Team 125
18 and Kraft Entities' contracts. Team 125 then filed the present action alleging intentional
19 interference with contract. Defendant now seeks to apply Illinois law and have the action
20 dismissed for failure to state a claim.

21 II. Choice of law

22 The parties disagree about whether the substantive tort law of Nevada or Illinois applies
23 to Plaintiff's claim for intentional interference with contract. "Under the Erie doctrine, a federal
24 court sitting in diversity must apply the substantive law of the forum state and federal procedural
25 law." Fretelucco v. Smiths' Food and Drug Centers, Inc., 336 F.R.D. 198, 202 (D. Nev. 2020).
26 This means that the substantive elements of a claim are determined under Nevada law. See
27 Rustico v. Intuitive Surgical, Inc., 993 F.3d 1085, 1091 (9th Cir. 2021) ("It is well established
28 that in diversity cases, such as this one, federal courts must apply the choice-of-law rules of the

forum state").

In Nevada, the "most significant relationship test governs choice-of-law issues in tort actions unless another, more specific section of the Second Restatement [of Conflict of Laws] applies to the particular tort." General Motors Corp. v. Eight Judicial District Court of the State of Nevada, 122 Nev. 466, 473 (Nev. 2006). Under this test, the factors to be considered by the Court are:

(a) The place where the injury occurred,

(b) The place where the conduct causing the injury occurred,

(c) The domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) The place where the relationship, if any, between the parties is centered.

Restatement Second §145.

Under the Second Restatement, for tortious interference claims, "[t]he applicable law will usually be the local law of the state where the injury occurred." Aclate, Inc. v. Eclipse Marketing LLC, 2020 WL 6158579, at *4 (D. Del. Oct. 21, 2020). In turn, the place of injury is typically "plaintiff's headquarters or principal place of business," though arguably it also could be where Eastern or 2/25 are located. Id.

Team 125 alleges that its principal place of business is Illinois. (Compl. ¶ 6). Eastern's headquarters are in Pennsylvania. (Compl. ¶ 7). 2/25 is located in Massachusetts. "Similarly, on a motion to dismiss, the place of the conduct causing the injury – the second factor – is assumed to be the Defendant's principal place of business." Aclate, Inc., 2020 WL 6158579, at *4. Eastern's principal place of business is in Pennsylvania. (Compl. ¶ 7). For the third factor, Team 125 alleges it is incorporated in Delaware and has a principal place of business in Illinois. (Compl. ¶ 6). Eastern is alleged to be incorporated in Nevada with its principal place of business in Pennsylvania. (Compl. ¶ 7). Finally, while there is no relationship between the parties, the conduct at issue in this case relates to the business relationships between Team 125 and the Kraft Entities, and Eastern and the Kraft Entities. The Kraft Entities operate out of Massachusetts, and the business dealings at issue took place in Massachusetts, Illinois, and Pennsylvania.

The lone factor that even remotely implicates Nevada is that Nevada is Eastern's place of incorporation. However, "a company's contacts with a state that are not significantly related to the cause of action at issue are an insufficient basis for the application of that state's laws." Abogados v. AT&T, Inc., 223 F.3d 932, 936 (9th Cir. 2000) (rejecting application of New York law based on defendant's incorporation in New York).

Accordingly, the Court finds that Illinois law governs the tortious interference claim as both the place that damage is likely to be suffered and the location at which the alleged conduct is aimed. The Court notes that there is no real difference between Illinois, Pennsylvania, and Massachusetts law. All require pleading and proof of the same elements to establish a tortious interference with contract claim. Under Illinois law, the elements of a tortious interference with contract claim are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." Koehler v. Packer Group, Inc., 53 N.E.3d 218, 237 (Ill. App. 2016) (citing Health Care Svcs., Inc. v. Mt. Vernon Hospital, Inc., 131 Ill.2d 145, 154-55 (Ill. 1989)). These are the same elements under Pennsylvania and Massachusetts law. See, e.g., Griswold v. Drexel Univ., 2021 WL 1518879, at *1 (E.D. Pa. Feb. 11, 2021); JNM Hosp., Inc. v. McDaid, 59 N.E.3d 419, 421 (Mass. App. 2016).

III. Motion to Dismiss

"A dismissal under [Rule] 12(b)(6) is essentially a ruling on a question of law." North Star Inter'l v. Ariz. Corp. Comm., 720 F.2d 578, 580 (9th Cir. 1983). A complaint may be dismissed as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." Smilecare Dental Group v. Delta Dental Plan, 88 F.3d 780, 783 (9th Cir. 1996) (quoting Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984)).

A complaint does not have to contain "detailed factual allegations," but must contain more than an unadorned "the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (internal citations omitted).

In deciding a motion to dismiss, the court "must accept all well-pleaded factual allegations as true." Siaperas v. Mont. State Comp. Ins. Fund, 480 F.3d 1001, 1003 (9th Cir. 2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

IV. Intentional Interference with Contract

Defendant argues that Team 125 has not adequately pled – that is, with specific, factual, non-conclusory allegations – (i) that Eastern had knowledge of Team 125's contracts with 2/25 or any other Kraft Entities, (ii) that it intentionally procured the Kraft Entities' breach, and (iii) that Eastern's alleged interference was the "but-for" cause of any purported breach. The Court finds that Plaintiff's allegations sufficiently allege that Eastern had knowledge of Team 125's contracts with 2/25 or other Kraft Entities and that the alleged interference was the "but-for" causation of the alleged breach of contract.

However, under Illinois law, the third element of a tortious interference with contract claim requires Plaintiff to adequately allege the defendant's intentional and unjustified inducement of a breach of the contract. See Koehler, 53 N.E.3d at 237. Here, the allegations of the complaint only make conclusory legal allegations, not allegations of fact, that Eastern's actions caused Kraft Entities to breach the contract with Team 125. Plaintiff's response in opposition to the motion to dismiss does include allegations that satisfy the third element:

> Moreover, the very agreements between Kraft and Eastern required that Eastern attempt to hire Team 125 employees. Eastern employees ghost-wrote draft letters and emails on behalf of Kraft

> prior to and after Kraft abandoned Team 125, requiring much more of Team 125 than any contract with Kraft required.

Team 125, Inc.'s Opposition to Easter Airlines, LLCS Motion to Dismiss, Doc. No. 12, p. 3, ll. 16-19. However, those allegations are not made in the amended complaint. Accordingly, the Court grants Defendant's motion to dismiss with leave to amend.

V. Request for Judicial Notice

As the Court was preparing this order for entry, Defendant filed a Request for Judicial Notice (#28). Defendant's motion to dismiss had informed the Court of ongoing arbitration proceedings between Plaintiff and a Kraft Entity. The arbitration award in that case had not yet been confirmed at the time the reply was filed. This request for notice informs the Court that the arbitration award has now been confirmed. Defendant requests that the Court use the arbitration award to find that no contract has been breached by Kraft Entities and therefore this action must be dismissed. However, as noted, this issue was premature when the motion was filed. It was not fully briefed and the Court declines to consider it now. Defendant may file the appropriate motion if Plaintiff chooses to file an amended complaint.

VI. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is **GRANTED with leave to amend;**

IT IS FURTHER ORDERED that Plaintiff may file an amended complaint within twenty-one (21) days of the entry of this order, failure to do so will result in the dismissal of this action.

Dated this 29th day of March, 2022.

_____
Kent J. Dawson
United States District Judge