UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TEAM 125, INC., | Case No. 2:21-cv-00520-KJD-NJK |
| Plaintiff, | ORDER |
| v. | |
| EASTERN AIRLINES, LLC, | |
| Defendant. | |

Presently before the Court is Defendant's Motion to Dismiss Amended Complaint (#33). Plaintiff responded in opposition (#35) to which Defendant replied (#39).

I.  Factual and Procedural Background

The following allegations of the complaint are taken as true when evaluating a motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff, Team 125, Inc., ("Team 125") is an aircraft operator led by Lincoln Francis ("Lincoln"), who has thirty-five years of experience in the aviation industry. (#30, at 1-2). Lincoln was introduced to Bob Kraft in early 2016, because the New England Patriots and Kraft were interested in securing premium, private transportation to/from away games during the football season and other incidental travel. Id. Moreover, Kraft grew interested in expanding his empire by creating a commercial aircraft carrier to provide travel services to professional sports teams during their season. Id. Shortly after this plan was created, certain Kraft Entities[1] and Team 125 entered several agreements to build out a fleet of aircraft to accomplish this venture. Id. Team 125 built a fleet of planes from the ground up and has deployed its sophistication and

---

[1] As used in the complaint, the "Kraft Entities" are defined as those certain entities that are owned and/or controlled by Robert Kraft ("Kraft") that are relevant to this dispute and consist of Kraft Group, LLC ("Kraft Group"), Kraft Enterprises, LLC ("Kraft Enterprises"), Kraft Family, Inc. ("Kraft Family"), New England Patriots, LLC (the "Patriots"), and 2/25/94, LLC ("2/25").

knowledge of the airline industry and Federal Aviation Administration ("FAA") rules and regulations to take active steps toward ultimately becoming Team Airlines. Id.

Unbeknownst to Team 125, Kraft began to develop a relationship with Defendant Eastern Airlines ("Eastern"). Id. This led to Kraft terminating its contracts with Plaintiff without notice or reason. Id. Eventually, Team 125 discovered that the reason was Kraft's desire to proceed with the same plan with a new partner, Eastern Airlines. Id. According to the allegations of the complaint, Eastern is a fledgling commercial aircraft operation that knew of the contracts with Team 125 and offered Kraft enterprises a deal so sweet they could not refuse betraying Team 125 and abandoning Team Airlines during the eleventh hour, as FAA certification had been nearly completed. Id.

Eastern entered into agreements with Kraft covering the very same services and provisions Team 125 and Kraft contracted for prior to Kraft even sending a termination notice to Team 125. Id. Moreover, Eastern had knowledge of Team 125 and Kraft's relationship and contracts providing for such services. Id. Eastern Airlines even attempted to steal—and in some cases, did steal—employees of Team 125 who serviced the aircrafts pursuant to the Team 125 and Kraft Entities' contracts. Id. Team 125 then filed the present action alleging intentional interference with contract.

Specifically, Team 125 alleges that Eastern is liable for tortious interference with the oral joint venture agreement and management agreement because it induced the Kraft entity 2/25 "to terminate its relationship with Team 125 and stop paying Team 125, and in doing so breach their contracts with Team 125." (#30, at 7). 2/25 contracted with Team 125 on September 12, 2017, to operate, maintain, and store aircraft pursuant to a written aircraft consulting and management agreement. (#33-2).

On July 7, 2021, Team 125 and 2/25 participated in arbitration in Massachusetts. The arbitration panel ordered that "[o]n Team's Claims, 2/25 is liable in the total amount of $729,641.70. On 2/25's Counterclaims, Team is liable in the total amount of $800,000.00. Consequently, Team shall pay 2/25 $70,358.30." Id. at 13. On March 21, 2022, Justice Peter Krupp of the Massachusetts Superior Court entered an order confirming the arbitration award

and directing entry of judgment on the award. (#33-3). On April 26, 2022, the clerk of that court entered a final judgment pursuant to the confirmation order. (#33-4).

On March 30, 2021, while the arbitration process between Team 125 and 2/25 was going on, Team 125 filed its original complaint against Eastern in this Court. On March 29, 2022, this Court dismissed Team 125's complaint pursuant to Rule 12(b)(6) but granted leave to amend. (#29). On April 19, 2022, Team 125 filed its First Amended Complaint ("FAC") and Eastern brings the present motion to dismiss pursuant to Rule 12(b)(1) and/or 12(b)(6). (#33, at 1). Team 125 argues it has met the legal standard and should be allowed to proceed with its claim. (#35).

II.     Legal Standard

a. **Rule 12(b)(1)**

"The Ninth Circuit has recognized motions premised on res judicata grounds may be brought under a Rule 12(b)(1) motion." Bell v. City of Spokane, No. 2:21-cv-0146-TOR, 2021 WL 3891068, at *2 (E.D. Wash. Aug. 30, 2021) citing Gupta v. Thai Airways Inter. Ltd., 487 F.3d 759, 763 (9th Cir. 2007). The reason for this is that the court is without jurisdiction to address issues previously decided by another tribunal. See Lande v. Billings Hospitality, Inc., No. cv-06-133-BLG-RFC, 2008 WL 4180002, at *5 (D. Mont. Sept. 10, 2008).

On a motion to dismiss brought under Rule 12(b)(1), the Court is free to consider affidavits and evidence outside the pleadings. See Ass'n of American Medical Colleges v. U.S., 217 F.3d 770, 778 (9th Cir. 2000).

b. **Rule 12(b)(6)**

The Ninth Circuit has also recognized that res judicata is a proper basis for dismissal under Rule 12(b)(6). See Goldberg v. Cameron, 694 Fed. Appx. 564, 565-66 (9th Cir. 2017). When a motion such as this is brought, the Court may take judicial notice of the records of the prior proceedings that give rise to res judicata. See Davis v. Living Trust of Michael J. Fitzgerald, No. 2:12-cv-1939-JCM-NJK, 2013 WL 3427904 (D. Nev. July 8, 2013). This rule extends to the records of arbitrations. See Rachford v. Air Line Pilots Ass'n, Intern., 284 Fed. Appx. 473, 475 (9th Cir. 2008).

### c. Res Judicata

Res judicata, also known as issue preclusion or collateral estoppel, two related doctrines, exists to "limit to one the number of times a defendant can be vexed by the same claim or issue and [to] promote efficiency in the judicial system by putting an end to litigation." Sierra Pacific Power Co. v. Craigie, 738 F.Supp. 1325, 1327 (D. Nev. 1990) quoting Gilbert v. Ben-Asher, 900 F.2d 1407, 1410 (9th Cir. 1990). Res judicata "precludes parties or their privies from relitigating a cause of action which has been finally determined by a court of competent jurisdiction…." Id. at 1328. Issue preclusion, specifically, is what applies here, and this "prevents relitigation of the same issues actually adjudicated in an earlier judgment." Green on Behalf of Smith & Wesson Holding Corp. v. Monheit, 2:08-cv-238-RCJ-RJJ, 2010 WL 11579099m at *7 (D. Nev. Mar. 3, 2010).

The arbitration and final judgment occurred in Massachusetts; thus, the Court will apply Massachusetts issue preclusion law. See NTCH-WA, Inc. v. ZTE Corp., 921 F.3d 1175, 1181 (9th Cir. 2019). Under Massachusetts law, issue preclusion requires proof that "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication is identical to the issue in the current adjudication. TLT Const. Corp. v. A. Anthony Tappe and Assocs., Inc., 716 N.E.2d 1044, 1049 (Mass. App. 1999). "[O]ne not a party to the first action may use a judgment in that action defensively against a party who was a plaintiff in the first action on the issues which the judgment decided." Id. at 1050, quoting Home Owners Fed. Sav. & Loan Assn. v. Northwestern Fire & Marine Ins. Co., 354 Mass. 448, 455 (1968). "A nonparty to a prior adjudication can be bound by it 'only where [the nonparty's] interest was represented by a party to the prior litigation.'" Id. at 1050, quoting Massachusetts Property Ins. Underwriting Assn. v. Norrington, 395 Mass. 751 (1985). "An arbitration award has the requisite finality for res judicata purposes because it can be 'enforced as any other judgment or decree.'" TLT Constr. Corp., 716 N.E.2d at 1052 (quotations omitted).

///

///

**d. Tortious Interference With Contract**

This Court previously ruled that Illinois law governs Team 125's claim for tortious interference with contract because it is "both the place that damage is likely to be suffered and the location at which the alleged conduct is aimed." (#29, at 4). The elements of a tortious interference claim under Illinois law are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." Koehler v. Packer Group, Inc. 53 N.E.3d 218, 237 (Ill. App. 2016).

Eastern argues that:

> Harmonizing (i) Rules 12(b)(1) and 12(b)(6), (ii) the Massachusetts standards for applying res judicata, and (iii) the substantive Illinois elements of Team 125's tortious interference claim, if the Court finds that Team 125 is precluded from relitigating any one of the essential elements of tortious interference, the Amended Complaint should be dismissed.

(#33, at 9). On the other hand, Team 125 argues that "[a]s Eastern was not a party, nor in privity with a party, to the arbitration it can only use the arbitration award under the doctrine of issue preclusion, and only then if it meets each element under that doctrine. (#35, at 7).

III.    Analysis

The Court must analyze the elements of issue preclusion as it pertains to the arbitration between Team 125 and 2/25, with Eastern being the Defendant in the present case. First, the arbitration award, confirmation order, and final judgement are preclusive final judgments on the merits. See Credit Control Services, Inc. v. Noble Systems Corp., No. 12-11321-JLT, 2013 WL 1180944, at *1 (D. Mass. Mar. 20, 2013) ("There is no question that the final arbitration award, confirmed by this court, constitutes a final judgment on the merits.").

Second, Team 125 was a party to the Massachusetts arbitration. Team 125 is the party against whom estoppel is being asserted. In other words, Eastern may attempt to use the arbitration award to preclude Team 125's claim in this case. See TLT Constr. Corp., 716 N.E.2d at 1050.

Third and finally, the Court must determine if "the issue in the prior adjudication is identical to the issue in the current adjudication." See id. at 1049. Eastern argues that three of the essential elements of Team 125's claim were actually litigated and decided in the arbitration. (#33, at 11). Team 125 brings only one claim against Eastern in their First Amended Complaint– Intentional Interference with Existing Contractual Relations. (#30, at 6). The arbitration panel heard Team 125's seven causes of action against 2/25. (#33-2, a 6). 2/25 alleged six counterclaims against Team 125. Id.

The arbitration panel held that Team 125 failed to establish the existence of an oral joint venture and instead, only a "a shared hope of someday creating a commercial aircraft carrier providing travel services to various professional sports teams…. Id. at 7. However, the arbitration panel did find that 2/25 and Team 125 breached parts of a management agreement. Id. Specifically, the panel held that 2/25's notice of intent to terminate the management agreement was permitted by that agreement. Id. The panel held that (1) Team "failed to consult and cooperate in good faith to accomplish an orderly termination;" that (2) 2/25 did not act in good faith for various actions like failing to provide more than 48 hours' notice for inspection and proposing Eastern do the inspection with less than 48 hours' notice; and that (3) 2/25 was not obliged to allow Team 125 to transport the Patriots after July 21, 2020. Id. at 7-8. Ultimately, both Team 125 and 2/25 were ordered to pay the other for breach of the management agreement. Id. at 13. The panel also held that Team 125's claim for interference with third-party contracts was denied. Id. at 9.

Team 125 correctly asserts in its opposition that the arbitration panel found 2/25 to have breached parts of the management agreement. (#35, at 9). However, the Court is tasked with determining whether the third element of the issue preclusion test is satisfied– whether the prior adjudication is identical to the issue in the current adjudication. Team 125 explains what the arbitration panel held in regard to the management agreement but does not establish that what it wants litigated today against Eastern is any different from what was litigated during arbitration. The Court finds that the third element of the test is satisfied and that the issues from arbitration are essentially identical to Team 125's claim against Eastern in this Court.

Team 125 asserts in its complaint that Kraft entities, like 2/25, entered into agreements that were valid legally enforceable contracts. But the arbitration panel held there was no valid joint venture contract, only a management agreement. Team 125 asserts that it had the right to fly the Patriots until after the termination date. The arbitration panel ruled 2/25 was not obliged to do so. Team 125 asserts that the management agreement did not allow for the abrupt termination that occurred, but the arbitration panel ruled that 2/25's notice of termination was permitted by the agreement. Team 125 asserts that Eastern caused 2/25 to not make certain payments, but the arbitration panel ruled that 2/25 was obligated to pay $729,641.70 to Team 125. Team 125 also had to pay 2/25 for its own breaches of the management agreement. Overall, Team 125 has not demonstrated that the third element of the issue preclusion test has not been satisfied. Therefore, Eastern is entitled to defend against Team 125's claim.

Team 125 also argues that it may recover damages in this Court for its tortious interference claim in addition to the breach of contract damages it was awarded in the arbitration award. (#35, at 12). However, Illinois law prevents separate recovery for both breach of contract and tortious interference with contract. See Siegel v. Hershinow, No. 16 C 4803, 2016 WL 5171787, at *2 (N.D. Ill. Sept. 21, 2016). An Illinois court also stated that:

> The aim of awarding damages for tortious interference is the same as that of awarding damages for breach of contract– to place the injured party in same economic position it would have been in had the contract not been breached. Collection on one judgment would preclude recovery on the other, because there can be no double recovery for compensatory damages.

Klaff v. Wieboldt Stores, Inc., No. 84 C 0090, 1988 WL 142163 (N.D. Ill. Dec. 23, 1988). Team 125 cites to Koehler v. Packer Group, Inc., 53 N.E.3d 218 (Ill. App. 2016), and argues that this case stands for the proposition that:

> The arbitration panels' decision as to the damages 2/25 owed to Team 125 for breaching the Management Agreement does not limit the damages Team 125 may seek against Eastern, it only means that amount must be deducted from the damages Eastern is found liable for under the tortious interference claim.

(#35, at 14). However, Koehler stands in line with Siegel and Klaff. The court stated that "[d]amages recoverable when a plaintiff proves intentional interference with contractual relations

include pecuniary loss of the benefits of the contract… less any damages separately paid by the breaching party. Koehler, 53 N.E.3d, at 424-43. Team 125's claim is barred by issue preclusion.

Team 125 cannot overcome the preclusive effect of the arbitration award and final judgment on the merits in Massachusetts. Therefore, amending the complaint would be futile and this motion to dismiss is granted with prejudice.

IV.     Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant Eastern's Motion to Dismiss Amended Complaint (#33) is **GRANTED** with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendant Eastern and against Plaintiff.

DATED this 22nd day of March 2023.

Kent J. Dawson
United States District Judge